UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW DIEGERT,

                              Plaintiff,

                      -vs-                                    14-CV-1058-JTC

RECEIVABLES PERFORMANCE
MANAGEMENT, LLC,

                              Defendant.

---

      Plaintiff Matthew Diegert brought this action in December 2014 against defendant Receivables Performance Management, LLC ("RPM") seeking actual and statutory damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, based on allegations that defendant utilized an "automatic telephone dialing system" ("ATDS"), as defined in the TCPA,[1] to place multiple calls to plaintiffs' cellular telephone, and left pre-recorded messages, in an effort to collect on a debt allegedly incurred by plaintiff's wife. *See* Dkt. No. 1, ¶ 13. In response to the complaint, RPM moved for a temporary stay of proceedings in this action pending the outcome of several petitions filed with the Federal Communications Commission ("FCC") seeking updated rulemaking and

---

[1] The term "automatic telephone dialing system" means equipment which has the capacity–

    (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

    (B) to dial such numbers.

47 U.S.C. § 227(a)(1).

declaratory administrative rulings for clarification of issues regarding statutory terms and regulatory policies–issues that are within the FCC's particular field of expertise, and potentially dispositive of the claims raised by plaintiff in this action. See Dkt. No. 3-1.

As an exhibit in support of the motion for a temporary stay, RPM has submitted a copy of a petition filed with the FCC in January 31, 2014 by ACA International, a trade association of credit and collection professionals of which RPM is a member, requesting that the FCC engage in updated rulemaking to address significant issues related to dramatic changes in technology, including clarification of the rules pertaining to the use of automated dialing equipment by the debt collection industry; the scope of the "prior express consent" exception to TCPA liability in light of increased reliance on wireless technology; and the applicability of the TCPA to non-telemarketing activity. See Dkt. No. 3-3 (*In re ACA International*). Similar issues are presented by the following petitions for declaratory rulings, also still pending before the FCC: *In re Communications Innovators*, filed June 7, 2012 (see Dkt. No. 3-4); *In re GroupMe, Inc.*, filed March 1, 2012 (see Dkt. No. 3-5); *In re YouMail, Inc.*, filed April 19, 2013 (see Dkt. No. 3-6); and *In re Glide Talk, LTD.*, filed October 28, 2013 (see Dkt. No. 3-6).

RPM's request for a stay rests on the doctrine of "primary jurisdiction," which "allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc. v. AT & T Co.*, 46 F.3d 220, 222-23 (2d Cir. 1995) (internal quotation marks and citation omitted). This practice of judicial deference to agency expertise is concerned with "promoting proper

relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956), *quoted in Ellis v. Tribune Television Co.* 443 F.3d 71, 81 (2d Cir. 2006). "Overall, the 'doctrine seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within the regulatory regime.' " *Ellis*, 443 F.3d at 82 (quoting *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (Breyer, J., concurring)).

While "[n]o fixed formula has been established for determining whether an agency has primary jurisdiction" to consider issues within its recognized expertise that are pending before the court, *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 65 (1956), the analysis generally focuses on the following four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82 (citing *Nat'l Commc'ns Ass'n, Inc.*, 46 F.3d at 222). The Second Circuit has noted that "[t]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Nat'l Commc'ns Ass'n, Inc.*, 46 F.3d at 223.

As indicated by the pleadings and submissions presently before the court, RPM has raised questions in this case regarding (1) whether the "predictive dialer" apparatus utilized

by RPM to place the calls at issue is an "automatic telephone dialing system" subject to the prohibitions of the TCPA (see Sixth Affirmative Defense, Dkt. No. 8, ¶ 37 ("Plaintiff fails to state a cause of action under ... the TCPA as RPM did not employ the use of an 'automatic telephone dialing system' ")); and (2) the scope of prior express consent to be contacted on the telephone number provided on the underlying credit or loan application (see Seventh Affirmative Defense, Dkt. No. 8, ¶ 39 ("... even if RPM is deemed to be using an auto-dialer that possessed the capacity to store or produce numbers to be called, such calls were made pursuant to Plaintiff's express consent")), as well as the broader question whether the TCPA even applies to the debt collection calls complained of. See Eighth Affirmative Defense, Dkt. No. 8, ¶ 41 ("... calls to a business and/or residential telephone by a debt collector are specifically exempted by the TCPA")). These are the essential issues raised by prior application to the FCC in In re ACA International, In re Communications Innovators, and the other petitions cited above, presenting questions regarding interpretation of terms and policies clearly within the agency's particular field of expertise and discretion, and well outside the conventional experience of this court.

The court concurs with the view of RPM and the petitioners in the several matters pending before the FCC that, given the continuing proliferation of FDCPA/TCPA lawsuits in the federal courts based on "predictive" or "automatic" calls made to cellular telephones, the time has again come for "desperately needed updates, clarifications and revisions" to the TCPA rules in order to "allow covered communications to be governed by a clear, fair and consistent regulatory framework that protects the interests Congress contemplated in enacting the TCPA without impeding legitimate business operations." In re ACA

*International*, Executive Summary, Dkt. No. 3-3, p. 3. Indeed, the FCC has previously addressed the definition and scope of the term "automatic telephone dialing system" under the TCPA, and has revisited the issue several times in recognition of the "need to consider changes in technologies." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14092, 2003 WL 21517853, at *46 (F.C.C. July 3, 2003); *see also* 7 F.C.C. Rcd. 8752, 1992 WL 690928 (F.C.C. Oct. 16, 1992); 10 F.C.C. Rcd. 12391, 1995 WL 464817 (F.C.C. Aug. 7 1995); 23 F.C.C.R. 559, 2008 WL 65485 (F.C.C. Jan. 4, 2008).

With regard to the danger of inconsistent rulings, the court need look no further than the split of case law authority on the threshold issue as to whether the protective provisions of the TCPA even apply to debt collection calls. *Compare Meadows v. Franklin Collection Service, Inc.*, 414 F. App'x 230, 235 (11th Cir. 2011) (FCC has made clear that debt collection calls are subject to the TCPA's "established business relationship" and "commercial purpose" exemptions"), *and Franasiak v. Palisades Collection, LLC*, 822 F. Supp. 2d 320 (W.D.N.Y. 2011) (relying on FCC rulemaking decisions that debt collector's ATDS calls to non-debtor fall under TCPA's "commercial call exemption"), *with Iniguez v. The CBE Group*, 969 F. Supp. 2d 1241, 1247 (E.D.Cal. 2013) (neither TCPA nor implementing federal regulations contain a debt collector exception, or any exceptions related to calls made to cellular phones; citing cases).

Plaintiff cites *Nigro v. Mercantile Adjustment Bureau, LLC*, 769 F.3d 804 (2d. Cir. 2014), in which the Second Circuit held that a debt collector who made numerous automated calls to the plaintiff's mobile phone attempting to collect plaintiff's deceased

mother's unpaid electric bill was not entitled to invoke the TCPA's "prior express consent" exemption from liability because plaintiff provided his mobile phone number to the power company/creditor for the purpose of disconnecting service, not "during the transaction that resulted in the debt owed." *Id.* at 806. The circuit court relied upon the FCC's interpretation of the prior express consent exemption in the FCC's January 2008 ruling (23 F.C.C.R. 559 (F.C.C. Jan. 4, 2008)), which is one of the specific issues subject to ACA International's pending FCC petition requesting updated rulemaking in light of consumers' ever-increasing reliance on wireless telephone service. In this court's view, further guidance from the agency with respect to this and other issues raised by the pending petitions could provide a much needed measure of clarity regarding the scope of TCPA liability. As one court has recently observed in applying the primary jurisdiction doctrine to grant a debt collector defendant's motion to stay a TCPA action pending the FCC's determination of the issues raised by the *In Re Communications Innovators* petition:

> The law is unclear whether Congress intended the TCPA to prevent [the use of an autodialer to call cellular phones for debt collection purposes]. Telemarketing is one activity while collecting debt from known debtors seems to be a wholly separate activity. Whether the latter activity falls within the scope of the TCPA is currently being addressed by Congress and the FCC [in *In Re Communications Innovators*]. The issue is clearly one of policy within those bodies, and guidance on the "capacity" of autodialing systems would further clarify the law that [the plaintiff] seeks to enforce in this action.

*Hurrle v. Real Time Resolutions, Inc.*, 2014 WL 670639, at *1 (W.D.Wash. Feb. 20, 2014); *see also Higgenbotham v. Diversified Consultants, Inc.*, 2014 WL 1930885 (D.Kan. May

14, 2014) (granting stay pending FCC's determination of issues rased by the *In Re Communications Innovators* petition).[2]

The court agrees with these observations, and has recently adopted the same reasoning and approach in granting stay applications in other TCPA actions. *See Passero v. Diversified Consultants, Inc.*, No. 13-CV-338, 2014 WL 2257185 (W.D.N.Y. May 28, 2014), continued Mar. 23, 2015 (Dkt. No. 31); *Gervasio v. Diversified Consultants, Inc.*, No. 13-CV-796 (W.D.N.Y. Aug. 14, 2014) (Dkt. No. 22), continued Mar. 23, 2015 (Dkt. No. 25); *see also Wahl v. Stellar Recovery, Inc.*, No. 14-CV-6002, 2014 WL 4678043 (W.D.N.Y. Sept. 18, 2014) (Geraci, C.J.); *Hucker v. Receivables Performance Management, LLC*, No. 11-CV-845 (W.D.N.Y. Aug. 8, 2014) (Foschio, M.J.) (Dkt. No. 40), continued Apr. 20, 2015 (Dkt. No. 43); *Dorf v. Diversified Consultants, Inc.*, No. 13-CV-6374 (Sept. 26, 2014) (Feldman, M.J.) (Dkt. No. 24). While mindful of the long pendency of the petitions before the FCC, and the lack of any indication in the submissions on file as to when the FCC might issue any final decision, consideration of the primary jurisdiction factors in this case leads the court to conclude that, in view of the relatively early stage of proceedings, "the benefit to be provided by FCC guidance on potentially dispositive issues in this litigation outweighs the benefit to plaintiff in allowing the action to proceed." *Mendoza v. UnitedHealth Group Inc.*, 2014 WL 722031, at *2 (N.D.Cal. Jan. 6, 2014).

Accordingly, under the circumstances presented on this motion, and in the interest of avoiding inconsistent treatment within the district, the court makes the following order:

---

[2]Plaintiff further contends that, even if the ruling on the pending petitions manifests a change in the FCC's interpretation of the statute calling into question the rationale for the holding in *Nigro*, the change could not be applied retroactively to affect the outcome of this case. However, in light of procedural posture of this case at the early stages, and the discussion in the text herein, the court believes that determination of this issue should await a properly framed dispositive motion.

1. Defendant's motion to stay (Dkt. No. 3) is granted. All discovery and other pretrial proceedings in this action are stayed until a decision is issued by the FCC addressing the TCPA issues raised in *In re ACA International*, or in any of the other multiple petitions pending before it, relevant to the claims in this case.

2. Within 14 days of the FCC's ruling, defendant shall file a status report advising the court of the FCC's order, and attaching a copy of the order as an exhibit. If the FCC does not issue a ruling on these matters within 180 days following the date of entry of this order, defendant shall file a status report by that date advising the court as to the FCC's progress on resolving the petition. Upon receipt and review of these filings, the court will set an appropriate schedule for further proceedings.

So ordered.

Dated: 5/20, 2015
p:\pending\2014\14-1058.stay may14.2015

JOHN T. CURTIN
United States District Judge