UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW DIEGERT,                                    **DECISION AND ORDER**

                                                    14-CV-01058-LJV-JJM

                       Plaintiff,

v.

RECEIVABLES PERFORMANCE
MANAGEMENT, LLC,
                       Defendant.
_____

        This action has been referred to me by District Judge Lawrence J. Vilardo for supervision of non-dispositive pretrial proceedings [36].[1] Before me is plaintiff's motion [28] pursuant to Fed. R. Civ. P. ("Rules") 36 and 37, seeking an order: (1) compelling defendant Receivables Performance Management ("RPM") to answer plaintiff's document requests and interrogatories without objection; (2) deeming RPM to have admitted each of plaintiff's requests for admission; and (3) awarding attorney's fees and costs. An evidentiary hearing was held on November 3, 2016 [54]. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

        Plaintiff Matthew Diegert commenced this action on December 18, 2014, seeking recovery under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.*, for allegedly unauthorized "robocalls" made by RPM to plaintiff's cell phone, resulting in charges to his account. Complaint [1].

---

[1]     Bracketed references are to CM/ECF docket entries.

On December 30, 2015, plaintiff served RPM with interrogatories pursuant to Rule 33, a document request pursuant to Rule 34, and requests for admission pursuant to Rule 36. Mauro affidavit [28-1], ¶3; Fjermedal affidavit [30], ¶6. Following unsuccessful attempts to obtain responses to these demands (Mauro affidavit [28-1], ¶4), plaintiff filed this motion to compel on March 6, 2016, arguing that "a failure to serve timely responses to interrogatories and document requests serves as a waiver of objections", and that RPM's "failure to respond to the Requests for Admission within the statutory time period serves as an automatic admission of the requests". Plaintiff's Memorandum of Law [28-2], p. 2. RPM served its responses on March 22, 2016, containing numerous objections. Fjermedal affidavit [30], ¶10; [30-1]. While admitting that it "delayed in serving its responses to [plaintiff's] discovery demands and Requests for Admission" (Fjermedal affidavit [30], ¶15), RPM attempted to justify its delay by stating that "the parties were engaged in attempts to resolve this matter through mediation under the Court's ADR Plan". Id., ¶16.

Plaintiff responded, arguing that RPM's use of boilerplate objections "should be deemed a waiver of any objections to the request". Plaintiff's Memorandum of Law [32], p. 2. Plaintiff also noted that RPM had failed to produce a "key document", namely a "dialer report". Mauro affidavit [32-1], p. 2, n. 1. During a telephonic status conference on August 3, 2016 [38], plaintiff's attorney explained that the dialer reports would show the duration of phone calls between RPM and plaintiff. RPM's attorney responded that the reports were not in RPM's possession, and that he was attempting to obtain them from RPM's previous telephonic systems vendor, Noble Systems, Inc.

By letter dated August 25, 2016 [39], he stated that "[a]fter numerous attempts, our office has confirmed that the Noble dialer report can only be run by Noble, which no longer

has the requested records on its systems.  Moreover, Noble is unable to recreate those records, which would have been part of a rolling report.  Such records are deleted from its system on a daily basis after one year. In the instant case, discovery demands were interposed by plaintiff's counsel on December 30, 2015.  By that date, the call logs had already been removed from Noble's system.  Noble has advised RPM that it cannot recreate the dialer logs."

During a status conference later that day, the parties agreed that RPM would supplement its responses to plaintiff's discovery motion [40, 41].  On September 26, 2016, RPM filed supplemental responses to plaintiff's document requests, interrogatories, and requests for admission [44-1].  In a supplemental declaration filed that same day [44], RPM's attorney repeated the assertions contained in his August 25 letter relative to RPM's inability to obtain the dialer logs from Noble Systems.  Plaintiff's attorney disputed this assertion, attaching a declaration of RPM's CEO, Howard George (filed in another case), in which Mr. George stated that "RPM has the ability to generate ad hoc reports of outbound calling activity.  Our so-called Noble Report is a log of outgoing calls, showing the date, time and duration of the call". George declaration [45-1], ¶8.  Plaintiff's attorney further stated that "on September 30, 2016, I spoke directly with the General Counsel of Noble, Mr. Banks Neil, Esq., who confirmed . . . that Noble merely sold the robo-dialing system to the Defendant; and that Noble is in no way involved with making or storing evidence of the Defendant's robo-dialing campaigns.  The Defendant's apparent misrepresentations to Plaintiff's counsel and the Court on this issue is very concerning." Mauro declaration [45], ¶6.

By Text Order dated October 14, 2016 [47], I advised the parties that I would schedule a hearing to address "the conflicting representations by the parties as to whether defendant is in (or had) possession of those records.  To resolve that issue, Banks Neil, Esq.,

General Counsel of Noble, Howard George, CEO of defendant, or other representatives of these companies with knowledge of the issue shall be available to testify at the hearing." The hearing was subsequently scheduled for November 3, 2016 [50].

Two days before the hearing, RPM's Director of Information Technology, Lukasz Wojnowski, submitted a declaration [51] "to provide further clarification as to our counsel's prior declaration which asserted that the Noble dialer report can only be run by Noble (not RPM) and that Noble no longer has the requested records on its systems" (id., ¶2). He stated that "the above assertion is technically inaccurate as RPM can request the generation of the Noble dialer report for a limited one year period . . . . After the one year period, however, RPM cannot access or replicate those records" (id.). He further stated that "[t]he software has the ability to generate a report pursuant to the customized settings set by RPM. RPM's software settings allowed an agent to generate a call report showing . . . the duration of each call within the preceding one year from the date of the call. Once the call is over a year old, it no longer populates on the report" (id., ¶4).

The hearing was conducted telephonically, and was digitally recorded. Noble Systems' Chief Information Officer, John Simpson, accompanied by Noble Systems' General Counsel Banks Neil, testified on behalf of Noble Systems, and Mr. Wojnowski testified on behalf of RPM. Mr. Simpson testified that RPM purchased software from Noble Systems, that Noble Systems was not involved with RPM's making of calls to consumers after the software was sold, and that Noble Systems never stored records regarding phone calls made by RPM, nor did it make calls for RPM. He further testified that the Noble Systems software can generate a "call history report", and identified an excerpt from the User Manual [55-1] detailing how the report can be generated.

Mr. Wojnowski testified that although RPM had used the Noble Systems software for making the phone calls relevant to this action, it was no longer using it at the time of the hearing. He admitted that Noble Systems did not store information, and that RPM could itself generate a call history report using the Noble Systems software, as indicated in the User Manual excerpt [55-1]. He testified that calls could not be accessed more than one year prior to the date of the report, but did not know why. When shown another call history report dated August 10, 2011 [55-2], he could not explain why that report showed calls dating back to August 5, 2010, more than one year prior to the date of the report. He believed that RPM attempted to create a call history for calls in this case using the Noble Systems software, but did not know the result of that attempt. He stated that RPM's general counsel, Mark Case, would be more familiar with that issue. He did not know RPM's policy as to preserving information once litigation is commenced.

## ANALYSIS

### A. Call History Reports

Since RPM claims that it was unable to produce the requested call history reports from the Noble Systems software, it bears the burden of demonstrating that inability. *See* 1 Mueller, Kirkpatrick, Federal Evidence §3:3 (4th ed.) ("burdens are allocated to put them on the party most likely to . . . have access to the proof"); Gans S.S. Line v. Wilhelmsen, 275 F. 254, 264 (2d Cir. 1921) (the burden of proof as to impossibility of performance "is very heavily on him that advances it"). For several reasons, RPM has failed to satisfy that burden.

In the first place, although my October 14, 2016 Text Order announcing the hearing specifically mentioned RPM's CEO Howard George (who had stated that RPM has the

ability to generate call history reports), RPM did not produce Mr. George for testimony at the hearing - nor did it produce its General Counsel, Mark Case, identified by Mr. Wojnowski as the person most familiar with the attempt to generate a call history report. Instead, it produced only Mr. Wojnowski, who did not know why the software would not allow the reports to be generated. "[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." Graves v. United States, 150 U.S. 118, 121 (1893); Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 81-82 (2d Cir. 2000).

Secondly, RPM has given inconsistent explanations for its inability to produce the call history reports, as detailed in plaintiff's November 17, 2016 letter brief [58]. "An adverse credibility determination is appropriately based upon inconsistent statements [and] contradictory evidence." United States v. Ling Zhen Hu, 2011 WL 4915734, *2 (W.D.N.Y.), adopted, 2011 WL 4915732 (W.D.N.Y. 2011).

Finally, there would have been no reason for Noble Systems to limit the accessibility of call history reports, as demonstrated by the August 10, 2011 report [55-2] showing calls more than one year prior to that date. An adverse credibility determination can also be based on "inherently improbable testimony". Hu, 2011 WL 4915734, *2. For all of these reasons, I conclude that RPM has failed to demonstrate its inability to comply with plaintiff's request, and therefore grant plaintiff's motion to the extent that it seeks production of those reports. Although plaintiff now argues that RPM "appears to have spoliated evidence, by failing to preserve this evidence" (plaintiff's November 22, 2016 letter brief [60], p. 2), the pending motion sought an order compelling production, not sanctions for spoliation. Therefore, I will

give RPM one final opportunity to produce the requested call history reports.[2] If it fails to do so, plaintiff may then move for further relief.

**B.  RPM's Belated Responses to Plaintiff's Document Requests and Interrogatories**

RPM's untimely responses to plaintiff's document demands, interrogatories, and requests for admission cannot be excused by its "attempts to resolve this matter through mediation under the Court's ADR Plan". Fjermedal affidavit [30], ¶16. "The possibility of settlement exists in virtually every civil case. However . . . this does not provide an adequate basis for failing to comply with" a discovery deadline. Arnold v. Krause, Inc., 233 F.R.D. 126, 130 (W.D.N.Y. 2005). *See also* 1199 SEIU Pension Fund ex rel. Kennedy v. Eastern Niagara Hospital, Inc., 2013 WL 5531361, *2 (W.D.N.Y. 2013) ("[d]efendants were on notice that . . . their litigation obligations were not excused by the mediation. *See* ADR Plan, §4.1(C) ('The referral of a case to ADR does not delay or defer other dates established in the Scheduling Order and has no effect on the scheduled progress of the case toward trial')").

"A party must answer or object to interrogatories and production requests within thirty days after bring served. [Rules] 33(b)(3), 34(b). Untimely objections are waived unless the party's failure to object is excused by the court for good cause shown." Spencer v. Kenny, 2015 WL 6958009, *1 (D. Conn. 2015). Nevertheless, the court has discretion to choose a different sanction. "Rule 37 is flexible. The court is directed to make such orders as are 'just' and is not limited in any case of disregard of the discovery rules or court orders under them to a stereotyped

---

[2]  However, I will not allow RPM to again argue why it is unable to comply. "In the litigation process, when certain moments have passed, district courts are not required to give parties a 'do over'." Harleysville Lake States Insurance Co. v. Granite Ridge Builders, Inc., 2009 WL 4843558, *2 (N.D.Ind. 2009).

response." 8B Wright, Miller, *et al*., Federal Practice & Procedure (Civil) §2284 (3d ed.). "The choice of sanction should be guided by the concept of proportionality between offense and sanction." Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996).

While RPM's failure to timely object to plaintiff's discovery demands is not to be condoned, deeming all objections waived would be a sanction disproportionate to the offense. To cite but one example, document request 11 seeks production of "all complaints, interrogatory responses, deposition transcripts, and affidavits from any litigation in which you were a Defendant in which the Plaintiff (or counter claimant) in that litigation alleged violations of the TCPA and/or the FDCPA (or any state debt collection statute) for the last six years". [28-1], p. 8 of 21.

As amended effective December 1, 2015, Rule 26(b)(1), allows discovery of "any nonprivileged manner that is relevant to any party's claim or defense *and proportional to the needs of the case*" (emphasis added). "The amended Rule is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." Augustyniak v. Lowe's Home Center, LLC, 2016 WL 462346, *5 (W.D.N.Y. 2016). As explained in RPM's belated objection ([44-1], pp. 12-13 of 60), document request 11 is clearly not proportional to the needs of this case.

This ruling is without prejudice to plaintiff's ability to seek further relief with respect to any particular document request or interrogatory, provided that it first seeks to informally resolve the dispute with RPM.

**C. RPM's Belated Responses to Plaintiff's Requests for Admission**

"The motion to compel discovery provided by Rule 37(a) does not apply to a failure to respond to a request for admissions. The automatic admission from a failure to respond is a sufficient remedy for the party who made the request." 8B Wright, Miller, *et al.*, Federal Practice & Procedure (Civil) §2265 (3d ed.) However, "[a]lthough the failure to take any action within the prescribed period results in admission of facts stated therein, a court enjoys the discretion to permit a party to file such requests subsequent to the expiration of the time period when the delay was not occasioned by a lack of good faith, when such filing will facilitate a proper determination of the merits and when the untimely response will not unduly prejudice the requesting party." Szatanek v. McDonnell Douglas Corp., 109 F.R.D. 37, 39-40 (W.D.N.Y. 1985). Plaintiff "can not assert prejudice merely because [he] must prosecute this case upon its merits". Id. at 40.

This ruling is without prejudice to plaintiff's right to seek relief under Rule 37(c)(2) with respect to any request which it believes has been improperly denied.

**D. Attorney's Fees**

Plaintiff also seeks an award of attorney's fees and costs. Rule 37(a)(5)(A) provides that "[i]f the motion is granted - or if the disclosure or requested discovery is provided after the motion was filed - the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

An award of attorney's fees and costs is appropriate in this case. RPM has offered no legitimate excuse for its failure to timely respond to plaintiff's requests, nor has it adequately explained why it is unable to produce the call history reports requested by plaintiff. While I have not granted plaintiff all of the relief which it seeks, "[i]f the motion is granted in part and denied in part the court . . . may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner". Federal Practice & Procedure (Civil), §2288.

## CONCLUSION

For these reasons, plaintiff's motion to compel [28] is granted in part and denied in part. On or before February 28, 2017 RPM shall furnish plaintiff with the requested call history reports from the Noble Systems software, and plaintiff shall file its application for attorney's fees and costs incurred in connection with this motion. RPM may respond to plaintiff's application by March 10, 2017, and the application will then be decided on the papers.

Dated: January 26, 2017

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge